UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

JAMES WENDELL NOREM,          )
                              )
    Plaintiff,                )
                              )
v.                            )     CIVIL NO. 3:14cv1997
                              )
CAROLYN W. COLVIN, Acting     )
Commissioner of Social Security, )
                              )
    Defendant.                )

## OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits, 42 U.S.C. § 401 *et seq*. Section 205(g) of the Act provides, *inter alia*, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."

42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2009.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 31, 2009 through his date last insured of December 31, 2009 (20 CFR 404.1571 *et seq*.).

3.  Through the date last insured, the claimant had the following severe impairments: a major depressive disorder with anxiety features (20 CFR 404.1520(c)).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) , 404.1525, and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant could have understood, remembered, and carried out unskilled to semi-skilled tasks and instructions. The claimant could have maintained adequate concentration and attention for said tasks and instructions. The claimant could have interacted appropriately with co-workers, supervisors, and the general public, and lastly, the claimant could have managed the changes associated with a routine work setting.

6.  Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on November 13, 1952 and was 57 years old, which is defined as an individual of advanced age, on the date last insured. (20 CFR 404.1563).

8.  The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 31, 2009, the alleged onset date, through December 31, 2009, the date last insured (20 CFR 404.1520(g)).

(Tr. 19-29)

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on May 15, 2015. On August 21, 2015, the defendant filed a memorandum in support of the Commissioner's decision, and on September 2, 2015, Plaintiff filed his reply. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

In December 2009, Plaintiff protectively filed an application for Disability Insurance Benefits (DIB), alleging disability beginning October 31, 2009 (Tr. 214-20). Plaintiff's

application was denied initially and upon reconsideration (Tr. 121-28), and Plaintiff requested a hearing in front of an ALJ (Tr. 129-30). The ALJ held a hearing on January 5, 2010, at which Plaintiff (represented by counsel) and a vocational expert testified (Tr. 68-94). On April 26, 2011, the ALJ issued an unfavorable decision (Tr. 101-12), which was remanded by the Appeals Council on August 30, 2012 (Tr. 117-20). A second hearing was held on May 1, 2013, at which Plaintiff (represented by counsel), and a vocational expert testified (Tr. 36-67). On June 28, 2013, the ALJ found, based on vocational testimony, that Plaintiff was not disabled because he could perform work despite his limitations (Tr. 17-30). On September 2, 2014, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review (Tr. 1-6). *See* 20 C.F.R. §§ 404.955, 404.981. Under 42 U.S.C. § 405(g), Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

The Plaintiff has presented evidence that he suffered from obesity, osteoarthritis, anxiety, depression, and hypertension. Plaintiff's primary care physician was Dr. Walter Fritz. Plaintiff refers the court to several Exhibits which include treatment notes by Dr. Fritz and nurse practitioner Deborah Walsh. These treatment notes list Plaintiff's symptoms as poor memory, personality change, mood disturbance, emotional lability, anhedonia or pervasive loss of interests, feelings of guilt or worthlessness, difficulty thinking or concentrating, social withdrawal or isolation, blunt, flat or inappropriate affect, decreased energy, generalized persistent anxiety, hostility and irritability. Dr. Fritz opined that Plaintiff was not a malingerer and that he was responding poorly to medication. Dr. Fritz opined that Plaintiff's impairments would cause him to be absent from work about three times per month.

Dr. Choate, a consultative psychologist, indicated that Plaintiff has a mood disorder,

evidenced by years of depression, difficulty sleeping, lack of interest in activities, low motivation, social withdrawal, and worry. Dr. Choate diagnosed Plaintiff with Dysthymic Disorder and indicated a current GAF of 65, which reflects mild symptoms.

Dr. Ibrar Paracha, who completed a consultative physical examination report, noted that Plaintiff will on occasion have lower back pain that radiates down both legs, but that he does not have any evidence of back pain at this time. Dr. Larsen, an non-examining physician, accepts Dr. Choate's diagnosis of dysthymic disorder, but concludes it is not a severe impairment. Dr. Fernando Montoya, another non-examining physician, indicated that Plaintiff does not have a severe impairment.

Plaintiff underwent a consultative psychological examination by Dr. John T. Heroldt, who opined that Plaintiff's memory is well below average, Plaintiff did not understand simple proverbs, and Plaintiff had trouble with simple arithmetic calculations, was unable to successfully complete serial 3s from 20 and is not capable of handling his own funds. Dr. Heroldt diagnosed Plaintiff with major depressive disorder, recurrent moderate, without inter-episode recovery, and an anxiety disorder. Dr. Heroldt indicated Plaintiff had a GAF of 51.

The record also includes treatment notes from HealthLinc, which indicate Plaintiff was diagnosed with hypertension, depression, and anxiety disorder. On October 25, 2012, Plaintiff was assessed with "severe major depression without psychotic features." On November 20, 2012, Plaintiff was referred to Dr. Linda G. Munson of Porter Starke Services. She assessed Plaintiff with major depression, recurrent and moderate, and a GAF of 50, reflecting "serious symptoms" and "unable to keep a job."

In support of remand or reversal, Plaintiff first argues that the ALJ failed to follow Social

Security Regulations in evaluating opinion evidence. However, Plaintiff did not present evidence related to the relevant period to the ALJ to support a finding of disability. Social Security's DIB program is similar to any other insurance program. An individual must be fully insured at the time of disability to qualify for DIB, and the date last insured is the last day when an individual is eligible for DIB. 42 U.S.C. §§ 423(a)(1)(A),(c)(1)(B); 20 C.F.R. §§ 404.101(a), .131(a). Plaintiff's date last insured for DIB was December 31, 2009 (Tr. 17, 40). The Act and the regulations require Plaintiff to prove disability prior to his date last insured. 42 U.S.C. §§ 423(a)(1)(A),(c)(1)(B); 20 C.F.R. §§ 404.101(a). Therefore, the relevant time period for Plaintiff's DIB claim is from October 31, 2009, his alleged onset date, through December 31, 2009, his date last insured (Tr. 17). At the May 2013 hearing, the ALJ pointed out that Plaintiff's alleged onset date was October 31, 2009 and that his date last insured was on December 31, 2009 (Tr. 40). The ALJ later reiterated to Plaintiff and his attorney that Plaintiff had to be found disabled prior to his date last insured or December 31, 2009 (Tr. 49).

After the relevant period, in May 2010, Plaintiff's primary care physician, Walter Fritz, M.D., completed a mental impairment questionnaire (Tr. 400-04). Dr. Fritz opined, inter alia, that Plaintiff had poor-to-no mental abilities in several categories; had moderate restriction of activities of daily living; had moderate difficulties in maintaining social functioning; had frequent deficiencies of concentration, persistence or pace; had repeated episodes of decompensation; and had a GAF score of 38 (Tr. 400-04).

Plaintiff argues that the ALJ improperly gave little weight to the opinion of Dr. Fritz (Pl.'s Br. at 8-14). The regulations specify, and the Seventh Circuit has recognized, that it is the ALJ's role to weigh the medical opinions regarding a claimant's functioning. 20 C.F.R. § 404.1527;

7

*Wolfe v. Shalala*, 997 F.2d 321, 325-326 (7th Cir. 1993). An ALJ accords a treating physician's opinion controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2). The Seventh Circuit has held that "[m]edical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." *Knight v. Chater*, 55 F.3d 309, 314-15 (7th Cir. 1995) ("The record supports the ALJ's conclusion that Dr. Spencer's treatment notes did not support his opinion that Ms. Knight was disabled."). The Seventh Circuit has also noted that courts "uphold[] all but the most patently erroneous reasons for discounting a treating physician's assessment." *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010).

Plaintiff argues that the ALJ erred when he found that Dr. Fritz's opinion was unsupported by the longitudinal medical record or any other physician, prior to the date last insured. Plaintiff states that the only medical record during the relevant period of time was from Dr. Fritz's nurse practitioner, Deborah Walsh. However, Nurse Walsh's medical note, dated May 29, 2009, was generated five months prior to Plaintiff's alleged onset date and outside of the relevant period (Tr. 369). At any rate, the medical note did not show that Plaintiff was disabled. To the contrary, Nurse Walsh noted that Plaintiff's health had been good and he had unremarkable physical examination findings (Tr. 369). Although he complained of 'bouts' with depression, his medications Pamelor and Xanax improved his symptoms and his condition was stable (Tr. 369). Nurse Walsh instructed Plaintiff to return in three months (Tr. 369).

In the only medical record generated during the relevant period in November 2009, Dr. Fritz reported that Plaintiff had sought care after a six-month gap (Tr. 25, 405). Plaintiff

8

complained of having trouble remembering things and feeling fatigued and reported to Dr. Fritz that his depression and anxiety were flaring up (Tr. 405). Plaintiff could not afford counseling and refused to try other medications (Tr. 405). Dr. Fritz instructed him to return in three months (Tr. 405). The ALJ considered Plaintiff's treatment history with Dr. Fritz all the way back to 2000 and determined that it did not support his unduly restrictive May 2010 opinion (Tr. 24). 20 C.F.R. § 404.1527(c)(3)-(4) (defining consistency and supportability). As the ALJ discussed, Dr. Fritz indicated Plaintiff's symptoms were controlled with medication, which he did not change, and described his mental condition as stable (Tr. 24). Dr. Fritz also reported that Plaintiff had been in good health and had unremarkable objective findings (Tr. 24). Plaintiff reported only occasional symptomology and there was no mention of any medication side effects (Tr. 25). This evidence over a longitudinal period of time prior to Plaintiff's date last insured and Dr. Fritz's opinion does not show that Plaintiff was disabled during the relevant period.

Plaintiff next argues that the ALJ improperly evaluated his activities of daily living when finding that Dr. Fritz's opinion was unsupported by the record (Pl.'s Br. at 10; Tr. 27). First, Plaintiff takes issue with the ALJ's statement that "there was little evidence to support [Dr. Fritz's] finding [that Plaintiff] was moderately limited in his activities of daily living, which is an unquantifiable term" (Pl.'s Br. at 10; Tr. 27). Contrary to Plaintiff's argument, the regulations specify that this standard is qualitative, not quantitative. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C) (2015). Thus, the term 'moderate' is not the number of activities which are restricted, but the overall degree of restriction or combination of restrictions which must be judged. In other words, terms such as 'moderate' are qualitative and terms that describe frequency (i.e., often, occasional, etc.) are quantitative. Thus, the ALJ reasonably described the term 'moderate' as

9

unquantifiable, meaning it was a qualitative term (Tr. 27).

Additionally, Plaintiff takes issue with the ALJ's finding that he had no restrictions in activities of daily living prior to his date last insured (Pl.'s Br. at 10; Tr. 21). Plaintiff's claims he did not extensively care for his dogs, but provided them minimal care (Pl.'s Br. at 10-11). However, the record shows that Plaintiff had many dogs that he took 'good' care of, including feeding, watering, and walking his dogs (Tr. 21, 250, 262). He also cared for his fiancé's horse (Tr. 21, 26, 414). Plaintiff claims he made sandwiches and did not eat well (Pl.'s Br. at 11); however, he reported that he spent 1 ½ hours preparing food and when asked about changes since his condition began he responded that he did not cook much before his condition (Tr. 262-63). Further, despite some struggles with grooming and motivation, the record demonstrates that Plaintiff could vacuum, mow his law, make repairs, shop for groceries, drive, eat out at restaurants, visit others, handle money, fish, and hunt (Tr. 251-53, 263-65). These extensive activities undermine Plaintiff's claims of disabling limitations and do not support Dr. Fritz opinion.

The ALJ also found that Dr. Fritz's opinion that Plaintiff had marked limitation in concentration, persistence or pace was extreme and inconsistent with his treatment notes prior to the date last insured (Tr. 27). 20 C.F.R. § 404.1527(c)(3)-(4). This evidence showed that Plaintiff's mental symptoms were controlled with medication and he was stable (Tr. 369). Contrary to Plaintiff's assertions, the ALJ did not cherry-pick findings; rather, she noted the internal inconsistencies within Dr. Fritz's opinion. For example, Dr. Fritz found Plaintiff's concentration severely limited, but also found that he retained the ability to remember work-like procedures (Tr. 27, 402-04). Dr. Fritz also opined that Plaintiff was severely limited in his ability

to sustain an ordinary routine without special supervision even though the record shows he was able to take care of all his daily routines without help (Tr. 27, 402-04).

Likewise, Plaintiff's argument regarding the medical opinions of his GAF scores is also unavailing. The ALJ properly highlighted the contrasting GAF scores from Dr. Fritz (38) and Dr. Choate (65) (Tr. 27-28). Despite being just three months after Dr. Choate's evaluation, as the ALJ stated, there was no evidence of an exacerbation of incidents that could have explained Dr. Fritz's GAF score indicating severe limitations or symptoms (Tr. 27-28). The ALJ clearly thought Dr. Choate's GAF score was more consistent with the evidence of record showing impairment, but not any disabling limitations or symptoms.

Contrary to Plaintiff's assertions, the ALJ properly considered and gave partial weight to the state agency opinions (Tr. 27). Two state agency doctors opined that Plaintiff's mental impairments were non-severe (Tr. 383-96-398). The Commissioner's regulations state that other factors brought forward by the claimant or others are to be considered when determining the weight a medical opinion should be given, including the amount of understanding a medical source has of the Commissioner's disability program and the extent to which the medical source is familiar with other evidence in a claimant's case file. See 20 C.F.R. § 404.1527(c)(6). The ALJ was required to consider the state agency opinions because assessments by state agency medical consultants or other program physicians are to be considered and addressed in the decision as medical opinions from non-examining sources. Social Security Ruling (SSR) 96-6p, 1996 WL 374180, *2 (July 2, 1996). The regulations also provide that state agency medical consultants are "highly qualified" and "experts" in Social Security disability evaluation. 20 C.F.R. § 404.1527(e)(2)(I). Thus, the ALJ did not err by giving partial weight to these expert opinions (Tr.

11

27). *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("Rice complains that the ALJ impermissibly relied upon the opinions of Drs. Bilinsky and Graham, the Social Security Administration state agency doctors who determined Rice's RFC . . . The ALJ was entitled to rely upon their opinions.").

Additionally, the ALJ reasonably questioned whether Dr. Fritz was familiar with the definition of "Episodes of decompensation" contained in the Social Security Act and regulations, as there is no definition of the term contained within his May 2010 opinion (Tr. 404). As such, the ALJ did not err by pointing out the uncertainty of the term as used by Dr. Fritz.

Plaintiff incorrectly argues that the ALJ refused to consider the findings and opinions of consultative examiner John Heroldt and the treatment records from HealthLinc clinic  These records were included in the administrative record and reviewed by the ALJ (Tr. 412-47). The ALJ stated that these records were not part of the record pertaining to claimant's Title II application (Tr. 26). It is evident that the ALJ meant the records did not relate to the relevant period for Plaintiff's Title II/ DIB claim. The ALJ stated that he reviewed the complete record, even the evidence subsequent to the date last insured (Tr. 25). The ALJ discussed Dr. Heroldt's March 2011 consultative examination findings, including that Plaintiff had no evidence of mental symptoms during the examination and he was cooperative and attentive (Tr. 25, 414). The ALJ also specified that he found no evidence prior to Plaintiff's date last insured within the HealthLinc records, dated between December 2011 and April 2013 (Tr. 25, 417-47). The ALJ emphasized that even upon an exhaustive review of the HealthLinc records, there was no evidence of significant limitations consistent with Plaintiff's allegations of ongoing disability (Tr. 26).

Next, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence. A claimant's residual functional capacity (RFC) assessment is the most he can do despite his impairments. 20 C.F.R. § 404.1545(a). Significantly, the RFC assessment is an administrative finding, not a medical opinion. SSR 96-5p, 1996 WL 374183 (1996). As the finder of fact, the ALJ has the exclusive responsibility for formulating the RFC assessment. 20 C.F.R. § 404.1546(c).

In the instant case, the ALJ determined that Plaintiff's depressive disorder with anxiety features was severe (Tr. 19). In reaching her decision that Plaintiff was not disabled, the ALJ considered all of the evidence of record and, as the finder of fact, reasonably concluded that Plaintiff had the RFC to perform a full range of work at all exertional levels and could understand, remember, and carry out unskilled to semi-skilled tasks and instructions; maintain adequate concentration and attention for said tasks and instructions; interact appropriately with co-workers, supervisors, and the general public; and manage the changes associated with a routine work setting (Tr. 23).

Plaintiff takes issue with the ALJ's statement that his primary care physician, Dr. Fritz, found him in good health. Did ALJ did not cherry-pick this expression as Plaintiff claims. In fact, Dr. Fritz stated on numerous occasions that Plaintiff had been in good health, without chest pain and dysnea (Tr. 326-63, 369, 405-06). Additionally, his physical examination findings were mostly unremarkable (Tr. 326-63, 369, 405-06). Almost all of these records were outside of the relevant period (October 2009-December 2009), except one November 2009 record, which showed unremarkable physical examination findings (Tr. 405). Despite Plaintiff failing to provide more than one medical record generated during the relevant period, the ALJ reviewed all of the

evidence of record to determine if Plaintiff had become disabled prior to his date last insured on December 31, 2009. Plaintiff attempts to support his argument by quoting his own subjective statements in an August 2010 medical record (Pl.'s Br. at 15; Tr. 406). However, even this record after the relevant period showed that Plaintiff had normal physical examination findings and appeared comfortable (Tr. 406). Plaintiff reaches all the way back to 2005 to try to support his argument with a medical record noting his complaints of radiating back pain (Pl.'s Br. at 15; Tr. 344). The ALJ properly noted that there was no further mention of back pain between the 2005 medical record and the 2010 consultative examination (Tr. 20). Notably, Plaintiff did not even indicate he had any physical limitations on his function report (Tr. 20, 266). Nor was there any mention of physical limitations in the third party function report (Tr. 20, 254). Clearly, Plaintiff's evidence does not support Dr. Fritz's May 2010 opinion that Plaintiff had limitations in sitting, standing, walking, and using his hands and fingers, and was "stiff all over" (Tr. 404).

Regarding Plaintiff's obesity, the ALJ adequately considered this impairment (Pl.'s Br. at 15; Tr. 26). The ALJ explicitly considered the impact of Plaintiff's obesity on his other impairments when reaching his RFC conclusion (Tr. 26). Significantly, no doctor opined that Plaintiff had any specific functional limitations due to obesity. Additionally, the ALJ indirectly considered Plaintiff's obesity by considering the medical reports of the physicians of record, including Drs. Ibrar Paracha (Tr. 379) and Frank Choate (Tr. 374), and Fritz (Tr. 326-63, 369, 405-06), who noted Plaintiff's height and weight. The state agency physicians, who the ALJ considered, also reviewed this evidence when finding Plaintiff's physical impairments non-severe (Tr. 397, 399). In *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004), the Seventh held "the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware

of Skarbek's obesity. Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions." 390 F.3d at 504. In the present case, as in *Skarbek*, the ALJ considered the opinions of physicians who were aware of Plaintiff's obesity. The ALJ also inquired about Plaintiff's height (5'6") and weight (207 pounds) at the hearing (Tr. 42-43).Therefore, the ALJ adequately considered Plaintiff's obesity.

The record shows that the ALJ properly considered the consultative and state agency reviewing opinions when formulating her RFC. Contrary to Plaintiff's argument, such expert opinions may outweigh the opinion of a treating physician, particularly when the treating physician's opinion is not supported by the evidence of record as in this case. *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) ("[I]f the treating physician's opinion is inconsistent with the consulting physician's opinion .. . the ALJ may discount it."); *Skarbek*, 390 F.3d at 503("An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician . . . ."); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) ("When treating and consulting physicians present conflicting evidence, the ALJ may decide whom to believe, so long as substantial evidence supports that decision."); *Walker v. Bowen*, 834 F.2d 635, 644 (7th Cir. 1987) ("However, this court has never held that the treating physician's conclusions always must outweigh those of consulting physicians. In fact, we have recognized that consulting physicians may sometimes offer conclusions more credible than those of the treating physician."). In the present case, it was clearly appropriate for the ALJ to consider the state agency opinions, along with the other evidence of record when formulating Plaintiff's RFC. The record shows that Plaintiff treated with his primary care physician for his mental symptoms and did not seek or require any formal mental health care during the relevant period

(Tr. 26, 405). Plaintiff only underwent 'brief' psychotherapy and refused to try other medications (Tr. 405). In addition, he had unremarkable physical examination findings (Tr. 405). Contrary to Plaintiff's assertion, the ALJ discussed Dr. Heroldt's report, including his finding that Plaintiff had no evidence of mental symptoms and was cooperative and attentive (Pl.'s Br. at 16; Tr. 26, 414). Additionally, the HealthLinc records discussed by the ALJ, include reports from Linda Munson MD, which were outside the relevant period and thus, did not relate to or show that Plaintiff had significant, disabling impairments prior to his date last insured (Pl.'s Br. at 16; Tr. 25, 417-47).

Plaintiff's reported daily activities further support the ALJ's RFC finding (Tr. 21, 25). Plaintiff cared for his many dogs, cared for his fiancé's horse, vacuumed, mowed his lawn, made repairs, shopped for groceries, drove, ate out at restaurants, visited others, handled money, fished, and hunted (Tr. 21, 25, 250-53, 262-65). These daily activities undermine his claim of totally disabling mental and physical functioning limitations.

Lastly, Plaintiff contends that the ALJ's findings that Plaintiff was not entirely credible is not supported by substantial evidence. The ALJ found that, while Plaintiff's impairments caused significant limitations, his allegations and complaints were not entirely credible (Tr. 24), and not accepted as alleged (Tr. 26). A claimant's subjective symptoms are difficult to verify and the Seventh Circuit has held that "[an] administrative law judge [is] not obliged to believe all [of a claimant's] testimony. Applicants for disability benefits have an incentive to exaggerate their symptoms, and an administrative law judge is free to discount the applicant's testimony on the basis of the other evidence in the case." *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006). "An ALJ is in the best position to determine a witness's truthfulness and forthrightness; thus, this

Court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). "It is only when the ALJ's determination lacks any explanation or support that [a court] will declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003)).

Plaintiff contends that the ALJ employed boilerplate language (Pl.'s Br. at 16-17). The mere use of boilerplate language is not fatal; it is the use of boilerplate language without any other explanation that can be reversible error. *See Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) (providing that although the ALJ's decision "contain[ed] a considerable amount of boilerplate language and recitations[,] . . . the ALJ adequately evaluated [the claimant's] credibility"). While it is true that the ALJ included some initial boilerplate language, she also went on to discuss the evidence and inconsistencies between the evidence and Plaintiff's allegations (Tr. 24-28). Because the ALJ properly provided a rationale for her credibility analysis based on the evidence of record and it was supported by substantial evidence, her decision will be upheld. *See Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003) ("According to Jens, this [credibility] determination is flawed because the ALJ did not specify which statements were incredible, nor did he provide an evidentiary basis for the credibility finding. Pointing out these omissions, however, does not demonstrate that the ALJ's credibility finding is not supported by substantial evidence. . . . In this case, the record provides adequate support for the ALJ's credibility finding. . . . In sum, Jens has not demonstrated that the ALJ's credibility finding is patently wrong.").

Plaintiff takes issue with the ALJ's use of the term "sporadic," arguing that his depression was not sporadic . The ALJ did not state that Plaintiff's depression was sporadic; rather,

17

Plaintiff's mental health treatment was described as sporadic (Tr. 24). The record is clear that Plaintiff did not seek or require formal mental health care during the relevant period and only received "brief" psychotherapy (Tr. 405). Additionally, he had a six-month gap in treatment prior to this visit (Tr. 405). During the hearing, he admitted that he last treated with a mental health professional almost 10 years prior to his date last insured (Tr. 41-42). Thus, the ALJ reasonably described Plaintiff's mental health treatment as sporadic.

Plaintiff's argues that the ALJ failed to inquire into any reasons Plaintiff may have had for refusing treatment (Pl.'s Br. at 18-19). The ALJ acknowledged that Plaintiff 's finances were limited and he could not afford counseling (Tr. 25). Dr. Fritz reported that Plaintiff could not afford counseling (Tr. 405). Yet, when offered a different medication regime, Plaintiff was not interested in trying other medicines (Tr. 405). The ALJ pointed out that "despite ongoing financial limitations, the records indicated that [Plaintiff] remained reluctant in even considering additional avenues of treatment" (Tr. 25). Neither Plaintiff nor Dr. Fritz stated that he could not afford a medication change (Tr. 405). The ALJ properly considered Plaintiff's failure to pursue other options that may have been more affordable. The ALJ is allowed to presume that Plaintiff and his attorney made their strongest case for disability. *See Buchholtz v. Barnhart*, 98 F. App'x 540, 546 (7th Cir. 2004) ("[A]lthough [claimant] argues that the ALJ had the duty to develop the record regarding whether he sought low-cost insurance . . . the ALJ may presume that, had there been evidence that [claimant] sought low-cost options, counsel for [claimant] would have submitted it."). The ALJ noted an unexplained inconsistency between Plaintiff's characterization of the severity of his condition and the treatment he sought, which is highly probative of his credibility.

This court finds that the ALJ reasonably considered the entire case record in his credibility analysis, ultimately concluding that Plaintiff's impairments or their impact on his functionality was not as severe as he alleged. The ALJ credited Plaintiff's allegations of worsening symptoms at least to some extent and restricted him to work with some nonexertional limitations (Tr. 23). Plaintiff has failed to show that the ALJ's credibility analysis was "patently wrong."

Because substantial evidence supports the ALJ's RFC and her decision that Plaintiff was not disabled, this Court will affirm the Commissioner's decision.

### Conclusion

On the basis of the foregoing, the decision of the Commissioner is hereby AFFIRMED.

Entered: October 19, 2015.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court